IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANELLE WEISHAAR,<br><br>    **Plaintiff,**<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    **Defendant.** | Case No. 2:18-cv-02188-HLT-GLR |

### MEMORANDUM AND ORDER

Plaintiff Janelle Weishaar alleges one claim for wrongful termination in violation of public policy against her former employer, Defendant Wells Fargo Bank, N.A. Defendant moves to dismiss or, in the alternative, to stay proceedings and compel arbitration. Doc. 8. Because the Mutual Agreement to Arbitrate Claims between the parties includes a delegation provision, and Plaintiff does not challenge the enforceability of that provision, the Court compels arbitration and stays these proceedings.

**I.    BACKGROUND**

Plaintiff began working for World Savings Bank ("World Savings")—Defendant's predecessor by merger—in 2000. Doc. 9 at 1. In connection with her employment, Plaintiff and World Savings entered into a Mutual Agreement to Arbitrate Claims ("Agreement"), pursuant to which the parties agreed to arbitrate certain types of claims arising out of Plaintiff's employment (or the termination of her employment) that World Savings may have against Plaintiff or that Plaintiff may have against World Savings, including its "successors and assigns." Doc. 9-2 at 2. Plaintiff executed the Agreement on February 9, 2000. *Id.* at 4.

Under the Agreement, the parties further agreed that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the

interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable." *Id.* at 3. The Agreement directs that any arbitration held pursuant to its terms be conducted in accordance with current American Arbitration Association ("AAA") procedures. *Id.*

In 2006, during the pendency of Plaintiff's employment, World Savings' parent company, Golden West Financial Corporation ("Golden West"), was acquired by Wachovia Corporation ("Wachovia"). Docs. 9-1 at 2, 12-1 at 2, 12-2 at 2-5, 12-4 at 3-7. Wachovia subsequently merged with Defendant in 2008. Docs. 9-1 at 2, 12-1 at 2, 12-5 at 3-4. Plaintiff was terminated from employment with Defendant on July 13, 2017. Doc. 9-1 at 3. On March 15, 2018, Plaintiff filed a single claim against Defendant in state court for wrongful termination in violation of public policy. Defendant removed the case to this Court and has moved to dismiss or, in the alternative, to stay these proceedings and compel arbitration under the terms of the Agreement.

## II. STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, broadly applies to written arbitration agreements in "any contract evidencing a transaction involving commerce"[1] and provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress declared "a liberal federal policy favoring arbitration agreements," and questions of arbitrability must be resolved with this policy in mind. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

---

[1] The FAA's requirement that the underlying transaction involve commerce is to be broadly construed, and the Court finds that it encompasses the Agreement. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."). Plaintiff's arguments to the contrary are unpersuasive.

The FAA places agreements to arbitrate on "equal footing" with other contracts, "requir[ing] courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). To that end, the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4). The mere existence of an arbitration agreement, however, does not end the inquiry. Like other contracts, an arbitration agreement "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr.*, 561 U.S. at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In the context of a motion to compel arbitration, "[d]efendant bears an initial summary-judgment-like burden of establishing that it is entitled to arbitration." *Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). "Thus, defendant must present evidence which is sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* "If defendant makes such a showing, the burden shifts to plaintiff to demonstrate a genuine issue for trial." *Id.* As in summary judgment proceedings, "'[a] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests.'" *Perkins v. Rent-A-Ctr., Inc.*, 2004 WL 1047919, at *1 (D. Kan. May 5, 2004) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

**III. ANALYSIS**

Defendant moves to dismiss or, in the alternative, stay this action and compel arbitration, arguing that the Agreement is valid and enforceable against Plaintiff and that it is entitled to enforce the Agreement as successor to World Savings. Plaintiff opposes arbitration, claiming: (1) Defendant, as a non-signatory, cannot enforce the Agreement; (2) the Agreement is unenforceable

because it encompasses claims exempted from the scope of arbitration agreements under state law; and (3) certain fee-sharing provisions in the Agreement are unconscionable, rendering the Agreement unenforceable.

**A. As Successor to World Savings, Defendant Is Entitled to Enforce the Agreement.**

The Court must first determine whether the parties have agreed to arbitrate the dispute, applying the "'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'"[2] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone*, 460 U.S. at 24). Plaintiff does not dispute that she signed the Agreement. Rather, she argues that Defendant, as a non-signatory, cannot enforce the Agreement and has not shown it is a successor to World Savings with respect to the Agreement.

The Court finds that Defendant has presented sufficient evidence that it is successor to World Savings and, therefore, entitled to enforce the Agreement. Defendant submitted testimony from an employee relations manager, as well as documents from the SEC and FDIC websites, which are public records,[3] regarding the nature of the transactions between Defendant, Wachovia, Golden West, and World Savings. Docs. 9-1, 12-1, 12-2, 12-3, 12-4, 12-5. The evidence submitted by Defendant shows that World Savings was a subsidiary of Golden West until Golden West was

---

[2] Although, as discussed in Part III.B, *infra*, the Agreement contains a delegation provision assigning the determination of "threshold" issues of arbitrability to the arbitrator, the issue of whether Defendant—as successor to World Savings—is entitled to enforce the Agreement is properly within the Court's consideration. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293-98 (10th Cir. 2017); *Funderburke v. Midland Funding, LLC*, 2013 WL 394198, at *4-5 (D. Kan. Feb. 1, 2013); *Bazemore v. Jefferson Capital Sys., LLC*, 2015 WL 2220057, at *4 n.3 (S.D. Ga. May 11, 2015) ("[T]he Court must address the <u>existence</u> of an arbitration agreement between the parties, which is different from challenges to the validity, enforceability, and scope once the arbitration agreement is determined to exist.").

[3] *See* Fed. R. Evid. 803(8) ("A record or statement of a public office" is admissible if "it sets out . . . the office's activities . . . and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."); *United States v. Iverson*, 818 F.3d 1015, 1021-22 (10th Cir. 2016) (finding that the public-records exception to hearsay applied to information from the FDIC website because that information is "a record or statement of [the FDIC]" within the meaning of Rule 803(8), and further noting that "[s]everal courts have ruled that government websites fall within the exception for public records").

acquired by Wachovia in 2006, and that Wachovia ultimately merged into Defendant in 2008. *Id.* Aside from the bare allegation that there is "no direct relationship" between World Savings and Defendant, Plaintiff has submitted no argument or evidence to refute the testimony and documentation supplied by Defendant.

Based on this evidence, the Court concludes that Defendant is a successor to World Savings with respect to the Agreement. The Agreement provides that it applies to claims arising out of Plaintiff's employment that World Savings may have against Plaintiff or that Plaintiff may have against World Savings, including its successors and assigns. Doc. 9-2 at 2. As successor, Defendant is entitled to enforce the Agreement. *See Funderburke v. Midland Funding, LLC*, 2013 WL 394198, at *5 (D. Kan. Feb. 1, 2013) (holding assignee may enforce rights set forth in arbitration agreement); *Molloy v. RK Netmedia, Inc.*, 2009 WL 10669608, at *5 (C.D. Cal. Oct. 8, 2009) ("[N]on-signatory successors in interest to a contract are able to enforce an arbitration provision contained in the agreement.").

### B. Pursuant to the Agreement's Delegation Provision, Issues Regarding the Enforceability of the Agreement Itself Are for the Arbitrator.

Having concluded that, as successor, Defendant is entitled to enforce the Agreement, the Court need not consider Plaintiff's additional arguments against enforceability of the Agreement. The Agreement contains a delegation provision that leaves resolution of those issues to the arbitrator.

A delegation provision is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. While such "threshold" issues of arbitrability—including whether the agreement covers a particular controversy or whether the agreement is unconscionable—are generally decided by the court, when faced with a valid delegation provision these issues are resolved by an arbitrator. *See Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017); *Chen v. Dillard's Inc.*, 2012 WL 4127958, at *2 (D. Kan. Sept. 19, 2012) (finding that valid delegation provision provided arbitrator with authority to decide threshold issues of unconscionability and enforceability). Under the FAA, unless a party specifically challenges the enforceability of a delegation provision, the district court must treat the provision as valid and enforceable, leaving any challenges to the enforceability of the agreement as a whole for the arbitrator.[4] *Rent-A-Ctr.*, 561 U.S. at 72.

Here, the parties agreed to arbitrate disputes relating to "the interpretation, applicability, enforceability, or formation of" the Agreement, including "any claim that all or any part of this Agreement is void or voidable." Doc. 9-2 at 3. Plaintiff does not challenge the enforceability of this delegation provision. Rather, in her opposition to the motion to compel, Plaintiff generally attacks the enforceability of the Agreement as a whole, broadly claiming that the Agreement is "unenforceable" and "void." Doc. 11 at 6-8. Plaintiff's general arguments regarding enforceability do not address the validity of the Agreement's delegation provision, and that provision divests this Court of the authority to address any questions regarding the permissible scope of the claims encompassed by the Agreement and whether the Agreement's fee-sharing provisions are unconscionable. The arbitrator must decide these issues.

## IV. CONCLUSION

IT IS THEREFORE ORDERED BY THE COURT that Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 8) is GRANTED IN PART. The Court COMPELS arbitration and STAYS this case pending arbitration of the dispute.

---

[4] Moreover, where, as here, an agreement to arbitrate incorporates the AAA Rules, the Tenth Circuit has recognized that "all of our sister circuits to address the issue have unanimously concluded that incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability." *Belnap*, 844 F.3d at 1283.

IT IS FURTHER ORDERED BY THE COURT that the parties shall file a status report notifying the Court of the case's status when the matter is resolved or by February 28, 2019, whichever is earlier.

IT IS SO ORDERED.

Dated: August 31, 2018

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE